May it please the Court, Patrick Moss for the Plaintiff and Appellant Shivani Thakkar. I would like to reserve three minutes for rebuttal, if I may. Ms. Thakkar has no colon. Several years ago, it was removed due to severe ulcerative colitis. After that, she went to work for Honeywell, and they made her promise, if you become disabled, we will provide you with income protection for up to 26 weeks of your disability. And once she became disabled, under the plan, that was an irrevocable promise. They couldn't take it back. Was there a contract? My basic question here is whether there was a contract between Honeywell and your client, because I know that the plan itself says, I am not a contract. Right. The plan does say that, but it also says in paragraphs 9.1 and 10.2, and this is at the supplemental excerpts of record 23 and 24, that while the plan can be amended or withdrawn, no amendment shall diminish or eliminate any claim for any benefit to which the eligible employee shall have become entitled prior to such amendment.  It is a contract, Your Honor, yes. So it's a contract between Thakkar and Honeywell. Correct. But the contract is administered by Lina, which is Cigna Group Insurance's parent company, and they administer this like any other disability policy, any other disability plan. Ms. Thakkar, when she became disabled due to severe abdominal pain arising from her prior surgeries, filed a claim with Cigna, a disability claim, no different than any other disability claim. And then Cigna reviewed her claim and denied it in bad faith. She then filed an appeal, and they reviewed that and again denied it in bad faith. And these are the facts for this Court, because this is a Rule 12c, 12b-6 motion to dismiss. And, you know, this policy was there to protect her. It's the net that's supposed to catch her when she falls. It's the branch she grabs before she hits the ground. Did you make that argument about — I'm just looking in my notes here. In my notes, the argument about whether the plan is a contract, the argument that I have in my notes is that you were relying on the admissions that Lina made in the — in its amended answer. Did you make this argument that sections 9.1 and 10.2 of the plan indicate that it is a contract notwithstanding its disclaimer? I did in the oral argument. I didn't recall — Is it in the briefs? I don't believe so. It is in the record. And I don't — I recall that the district court said, can't they withdraw the plan? And I said they can. But the plan says that once somebody files a claim, they can no longer withdraw the plan as to that claim. And I — and I admitted to the district court, I didn't recall where that was in the plan or what section it was, because it wasn't an issue. And the briefing at the district court, everyone agreed for purposes of Rule 12c or 12b-6 this was a contract, because that was the well-pleaded allegation. Is it part of her employment contract? Correct. Is it part of her employment contract, or is it a contract? In other words, is there an employment contract between Thacker and Honeywell, and you're saying that the plan is a term of that contract? Yes. Or are you saying that the plan itself is a contract? The plan itself is a contract. Employment in Arizona is at will. But — But there's no written employment contract between Thacker and Honeywell, is there? There's none in the record. Okay. Not that I'm aware of. There may be a handbook that has certain terms, but there's nothing in the record. Okay. So there's a plan that has a disclaimer in it, and I know under Arizona law, disclaimers are given effect in many circumstances. Yes. Yes. But the key — Though I didn't see really this argument in your briefs about why we would analyze the plan as a contract other than relying on Lena's admissions. And I guess from what you're saying is that argument is not actually made in your briefs. And it wasn't made at the district court either. Okay. Nobody argued at the district court. Did Honeywell argue that it was not a plan? I mean, not a contract? In their answer, they denied that the plan was a contract. Lena admitted it. And then after Honeywell filed its answer, Lena filed an amended answer saying that's a legal conclusion that we don't have to respond to. So they amended their answer to remove their statement that the plan is a contract. They did, but they never denied it either. Okay. And then they made arguments that even if it is a contract, we're not an agent. But I didn't see anything further where Lena said the plan is a contract. So is that correct? Was there any place where they went back to their original statement? They, you know, in one of their answering brief, they say we prevailed on the tortious interference contract or for administering, because we were the agent hired to administer this contract. But they've never said this is a contract. But that wasn't an issue at the district court. So it's an issue that's not properly before this Court, because they admitted it, and in all the briefing, everyone accepted it. For my purposes, though, it would be, is it a separate contract or is it part of the employment relationship? I mean, it's a separate document. Yeah, it's a separate document, but are we only looking at that, the plan, as a separate and distinct contract, or is the plan part of the overall employment? It's part of the overall employment benefits package. So it's a salary continuation element, but it has a disclaimer in it. So I also didn't see any briefing about what is the effect of this disclaimer on whether it's part of the, I guess, implied in fact employment contract since it's at will. Yes. So help me with that, understand that. Yes. So whether a contract or an agreement modifies at will employment is a question of fact. It's not an argument that's been developed. And so if the Court has questions about that, I think the proper ---- Why is it a question of fact? The Arizona cases look at, set out legal standards for when a term is part of the contract. In other words, if we know what the agreement is, so I suppose there could be factual evidence of what Honeywell said to Ms. Thacker after issuing her the plan, but that's not in the record or in the complaint. But then the question of whether that constitutes a part of the contract or not would be a legal issue. Because Arizona sets out legal standards for what makes a contract and what a disclaimer as effective. Yes. The Wilkes case that Linus raised in its answering brief, it cites two other cases that haven't been briefed, but those cases like Volt and DeMoss say whether an agreement modifies employment at will is a question of fact. And then ---- So which case are you citing, too, that has that principle? Wilkes. It doesn't explicitly say. Well, what case explicitly says that? The DeMoss case. It's D-E-M-A-S-S-E. And where in the DeMoss case is that? That's not in the record because that wasn't an issue that was raised. But you're saying that it says in DeMoss that that's a question of ----  And I can ---- Can you point me to the place in that opinion that says that? Yes. It's 984P2nd at 1141-42. And this is what it says. Whether an implied-in-fact contract covering layoff seniority rights had been created remained a question of fact precluding summary judgment on that issue. And in the Leifold case, which is 688P2nd at 174, whether any particular personnel manual modifies any particular employment at will relationship and becomes part of the particular employment contract is a question of fact. Now, were there allegations in the complaint to this effect because this wasn't decided? Was it 12C? Yes. In the complaint, we alleged the plan as a contract. But, well, did you allege any fact showing that it was an implied-in-fact contract? I don't ---- Representations that were made? No. It's a plan ---- Did you come to work for us? We have this salary continuation plan, and you get all these benefits. Not in the complaint, Your Honor, because we alleged it's a contract. You know ---- Everybody operated on the notion that it was a contract. Right. And it could be withdrawn at any point.  Because I thought you said Honeywell denied it was a contract. Honeywell denied it was a contract. Lina admitted it's a contract. But then changed and said that's a legal issue which we won't address. Correct. Well, I just want to ---- so that all ---- that's correct. But at the motion to ---- the motion for judgment on the pleadings, was it argued in the ---- in Lina's motion for judgment on the pleadings that there was no contract here? No. They said for the purpose of ---- How did they tee up the case? How did they tee up their motion? Their argument ---- they made one argument to the district court. This is not an insurance contract. There can be no bad faith. That was their argument. And the district court agreed holding Arizona has not recognized bad faith, quote, outside the insurance contract context. And that's the issue that's on appeal, is whether Arizona ---- because that was the basis for the district court's holding, is whether Arizona recognizes bad faith, quote, outside the insurance contract. So for purposes of the motion for judgment on the pleadings, it was assumed that there was a contract of some sort? Correct, Your Honor. And it's in Lina's motion several times that, you know, for purposes of 12C or 12B6, we assume that that allegation is true. Okay. And so the only question is whether ---- if it's an insurance contract, if it qualifies as an insurance contract, then I guess they could look ---- the plaintiff could look to the tort damages for breaches of implied covenant of good faith and fair dealing, right? And their position is, well, it's not an insurance contract, so you can't allege a tort claim here. Their argument was it's not insurance. Whether it's a contract or not was not an issue. No, I mean, that's what I mean. It's insurance. It wasn't insurance. Right. They say this is not insurance in the classical sense. And, you know, their argument was outside of an insurance contract, no bad faith. And that's not what Arizona law says. The controlling of ---- The best case that says that that's ---- that supports what you just said. Rawlings v. Apodaca is the seminal Arizona case on when bad faith applies, how it applies, and why it applies. But the general employment ---- I thought the employment contract in Arizona does not set forth that sort of special relationship. Correct. Is that right? And so the best ---- your best case on that that you cited was Mendoza, where there was a workers' comp insurance. Right. Is that right? Right. So are you saying that this is the same as workers' comp insurance? What I'm ---- it's not identical, but the policy, the purpose, the function of the plan is essentially the same. It's that safety net. When someone's desperate, injured, in pain ---- And does Arizona have any case saying that if it's similar to workers' comp insurance, then it creates that sort of special relationship? Not that I'm aware of, Your Honor. It would be a ---- it's not addressed in Arizona law. Is this something that we should certify, a question we should certify to Arizona? The Court certainly may. I think under Rawlings and Mendoza and in the more recent Arizona case, Grattis, the answer is pretty clear. Grattis was the case that followed Mendoza and held injury caused by a self-insured employer's bad faith does not occur in the course of the employment. It arises in the course of the employer's handling of the claim. Was that a workers' comp case? That was, yes. So do you have any case that's not a workers' comp case, that's a payroll practice, such as this one? There's none that's a payroll practice. There are cases recognizing the tort of bad faith outside the insurance contract context. ENYART is one, which was a contract to procure insurance. Thomas was an escrow case. Johnson was a mortgage case. And Apache OxyMed was to provide medical equipment. So the district court's singular holding that Arizona does not recognize insurance bad faith outside the insurance contract context is not consistent with Arizona law. And Rawlings makes that clear. When you promise somebody protection from calamity and you violate that in bad faith, you can be held liable in tort. Do you want to save that? I do, Your Honor. Thank you. Five seconds before we vote. May it please the Court. My name is Christina Holmstrom, and I'm here to argue on behalf of Life Insurance Company of North America. Essentially, there is no way to find in Ms. Thacker's favor on this appeal without upending the payroll practice's exemption from ERISA and finding a duty under Arizona law that Arizona courts have refused to impose for 33 years. And I can take those issues in order, and unless the Court has questions, I'll be done. It's a pretty simple argument. I mean, our question is whether, if we say that there is a contract and a posted counsel says you've conceded as much or have argued it on that ground, then the question seems to be whether this would be deemed to be analogous to an insurance contract under Arizona law. So I'm not sure why ERISA and how ERISA characterizes the contract under federal law is relevant to our inquiry. I know that was one of your major points, but I guess I'm missing why that's even relevant. Sure, Your Honor. It's because if this plan, which we sort of assumed for the 12C motion, constituted a contract that's an open issue, if this plan is, in fact, insurance, then the plan itself would not fall under the payroll practices exemption and it would be subject to ERISA. Why? It could be insurance for Arizona purposes, but not for or analogous to self-insured workers' comp insurance for Arizona purposes and not be insurance under Federal standards. I don't see why they have to be. Is there any principle that would say they have to be identical? Yes, Your Honor. It's the policy behind the payroll practices exemption itself, and that was discussed in the case of Massachusetts v. Moresh, which is a United States Supreme Court case from 1989. And the Court explained that the reason Congress exempted, I think it was actually the Department of Labor, exempted payroll practices from ERISA is because it's equivalent to the payment of wages. And Congress chose not to regulate the payment of wages when it enacted ERISA. Well, I mean, that would be a good argument if the question was whether this was covered by ERISA or not. But I guess I'm still missing why it makes a difference for our analysis of Arizona law. Because this case was prosecuted and then pursued and then settled under State law claims. We would have approached our answer differently and had litigated the case differently if the premise was that this was an insurance contract rather than a payroll practices claim. Ms. Thacker pled it as a payroll practices claim and accepted a settlement of a wage claim from Honeywell, the employer. And to go back now and argue this isn't wages, that it's something other than wages, is inconsistent with the relief that she already obtained at the district court level. Nonetheless, the allegations are in the complaint, right? The allegations are in the complaint that it is an insurance claim. This is where the case started, correct? It is, except that it was pled as a payroll practices claim and it was pled under State law theories only. And in our motion to dismiss, I think actually in the reply, we pointed out that the theory of wages versus insurance that she was alleging were internally inconsistent. It's the same argument we're making on appeal. And at the oral argument, what I told Judge Tucci was if we're going to really go down this road and call this insurance, then LIONA needs a chance to amend its answer to assert preemption because we're not talking about the practice. Roberts. Well, let me ask you this. I mean, for purposes of Arizona law, would you, in order for the court, for Arizona courts to apply the tort of good faith and fair dealing to this contract, to this kind of contract, does it have to be pure insurance? It does not have to be pure insurance in the sense of what you and I typically think of as insurance, which is an insurance company writes you a policy because you've applied for insurance. But in almost all of the cases that are cited, what you have is a relationship where some party has agreed to step into the shoes of an insurance company. A classic example is the line of workers' compensation cases, where employers will separately and apart from the employment relationship take on the duty to provide an insurance policy, essentially, to their injured workers. There are also some cases in the briefs that dealt with vehicle warranties. And in that situation, the vehicle warranty company had agreed to provide insurance. It was insurance-like enough that it was stepping into the shoes of an insurer. So, no, it doesn't have to be as strict. This is an insurance policy like you have homeowners. But all the cases that talk about it really are not. So, again, to avail herself of the payroll practice's exemption, Ms. Thacker had to basically accept that what she was making was a wage claim. In fact, that's the only claim that she ended up pursuing all the way against Honeywell. Why did she have to accept it? It was offered by Honeywell. I'm sorry. I don't understand your question. Honeywell offered this short-term disability plan. Honeywell offered a salary continuation plan. So, in her mind, she had to say, oh, this is just nothing more than salary. Is that what you're saying? In order for it to be a payroll practice's claim, exactly. So, were we to certify this to the Arizona Supreme Court and we say, this is a payroll practice standard or an agreement for salary continuation by Honeywell, and but it creates a special relationship that's different than the normal employment relationship, can't the Arizona Supreme Court say it's not, it may not be insurance, it's not workers' comp insurance, but it's sufficiently similar, raises similar equitable concerns that to the extent that it's a contract, we'll say that there can't be a tortious breach. I mean, they wouldn't be foreclosed from saying that, would they? I don't think that the Arizona Supreme Court would be foreclosed from determining whether such a special relationship existed. I do think that we would preserve the arguments for the federal court system as to whether that holding has any impact on a risk of preemption. So, in your view, if the Arizona Supreme Court said this sort of agreement for payroll continuation, salary continuation, creates a special relationship, then your argument would be that that's preempted by ERISA remedies. Is that what you're saying? Correct, Your Honor, because at that point, it would no longer be a payroll practice. It would be a short-term disability plan subject to ERISA. It can't be closed. So a payroll practice could not create a special relationship. Is there some rule of law as to that? It's the very nature of the payroll practice exemption. It is wages. It's not the special relationship. The United States Supreme Court has said that if the risk the claimant is suffering is something more than just the loss of wages, which is what's necessary to get to that special relationship status, then it's not a payroll practice's claim. It's not a payroll practice's plan. It's a short-term disability plan subject to ERISA, because that was within the scope of what Congress has chosen to regulate, whereas wages are not. And, again, I think that having settled a wages claim with her employer, we're in a very procedurally awkward situation to send it back to the Arizona Supreme Court at this point to determine whether there was a contract, I guess which would go to the district court, but to determine whether there was a contract with Honeywell, who's been settled out of the case, and also potentially, if Your Honor continues in that line of thinking, you'd end up with a situation where she's potentially limited to ERISA claims, but has already received compensation for a State law wage claim. I mean, the Arizona Supreme Court could say, we think that the employee-employer relationship is a special relationship and that for a wrongful discharge claim, you're entitled to tort damages. I mean, there's no Federal law principle that would preempt that sort of ruling, correct? Correct, Your Honor. But the Arizona Supreme Court has said that there is not a special relationship in the employer-employee context. That came from Wagenseller, which was 33 years ago, and no case since then in the appellate courts in Arizona has gone back on that. There simply is not a special relationship between the employer and employee to support a tort. And I just heard Ms. Thacker concede that the short-term disability plan was a part of the employment contract, not a separate — she's never alleged it was a separate stand-alone contract. And again, the issue of whether this was in fact a contract wasn't fully litigated at the district court level. I think we've got strong arguments that there is no contract there. But again, that would be a really awkward argument to make without Honeywell in the case, because they've already paid the wages and settled out. So in conclusion, since — oh, I've got plenty of time left. Plaintiffs throughout the years in Arizona have attempted to import the duty of good faith in the tort context on employers. And the courts have consistently declined to do that. There is no reason to expand that law and recognize such a special relationship between Ms. Thacker and Honeywell here. There is no relationship at all between Ms. Thacker and Lina in this case. So that can't be the basis for a tortious interference claim. And I want to address a couple of the points that Ms. Thacker raised in her argument. She began by arguing that Honeywell made an irrevocable promise to provide her short-term disability benefits. It didn't. As Your Honor has noted, the plan says it's not a contract. And in fact, it does say that it can be terminated at any time. While it does provide that once an employee is receiving those short-term disability benefits, the benefits can't be terminated as to that employee, there's certainly no guarantee that the payroll practices plan will continue in perpetuity. So it certainly was not an irrevocable promise to pay her disability benefits. I think I've already covered this, but Lina did not agree and Honeywell did not agree that there was a contract. I think that's an open question. And again, Ms. Thacker did concede that the short-term disability plan was part and parcel of the employment contract, but as we've been discussing, if it was a standalone contract, it would come within the realm of a short-term disability plan instead of a payroll practices plan and would then be subject to ERISA. And Ms. Thacker's remedies would lie with ERISA. And unless the court has any further questions, I think I've covered all of the points I wanted to hit. Thank you. Thank you. Just briefly, so there's no dispute that for the purposes of this briefing, there's a contract. Lina admitted that several times already, that it was unchallenged, and it, I believe, is, quote, an open question. Ms. Thacker's not the one that chose to exempt this plan from ERISA. That was Honeywell. And if their court finds a special relationship under Rawlings, which it fits all the criteria for Rawlings of a special relationship, that doesn't make it ERISA. Under Marash, whether something is ERISA depends on whether there's a separate fund, because ERISA was designed to protect separate funds for employee benefits. Marash also distinguishes between benefits payable in the normal course, like vacation, and those paid upon a contingency outside the control of the employee. This case is no different than any other insurance claim. Ms. Thacker was promised protection. Lina denied that in bad faith. The rationale of Rawlings of compensation for the harm she suffered when that protection was denied and deterrence against Lina is overwhelming here. And we think the district court's decision is contrary to Arizona law and should be reversed. Thank you. Thank you. Thank you, counsel. We appreciate your arguments this morning. And the matter is submitted.
judges: Siler, Paez, Ikuta